UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DERRICK SCOTT                                         CIVIL ACTION NO. 10-cv-1776

VERSUS                                                JUDGE STAGG

LONNIE NAIL, ET AL                                    MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Derrick Scott ("Plaintiff") is a self-represented prisoner who is currently housed at the Louisiana State Penitentiary in Angola. He was formerly held at the David Wade Correctional Center, and his complaint in this case is that officials at Wade violated his constitutional rights when they disciplined him for allegedly refusing to double bunk with another inmate. Plaintiff has filed a Motion for Summary Judgment (Doc. 17) and a Motion for Judgment as a Matter of Law (Doc. 23). Defendants responded by filing their own Motion for Summary Judgment (Doc. 24). For the reasons that follow, it is recommended that Plaintiff's motions be denied and that Defendants' motion be granted.

**Relevant Facts**

Plaintiff's Motion for Summary Judgment is accompanied by an unsworn declaration made by him pursuant to 28 U.S.C. § 1746. Such a statement is competent summary judgment evidence. Hart v. Hairston, 343 F.3d 762 n.1 (5th Cir. 2003). Plaintiff states that he was housed in the N-4 housing unit on extended lockdown on D Tier when Captain

Williams came to his cell and asked if he was willing to be double bunked. Plaintiff states that he told Williams that he and inmate Moore could double bunk. Williams left the tier and, according to Plaintiff, returned about an hour or two later with a rule violation report ("RVR") that charged Plaintiff with flatly refusing to be double bunked with any other offender.

Plaintiff states that he appeared before a disciplinary board made up of Colonel Lonnie Nail and Jamie Fussell. Plaintiff asked that (1) both members recuse themselves on the grounds that he had litigation pending against them, (2) he be allowed to call witnesses, and (3) the board dismiss the charge because Rule 30W, on which the charge was based, is vague and overbroad. The motions were denied, Plaintiff was found guilty, and the board sentenced him to 10 days isolation.

Plaintiff argues in his Motion for Summary Judgment that the disciplinary hearing violated his procedural due process rights because (1) his request to call a witness was denied, (2) the catch-all disruptive conduct rule under which he was cited is unconstitutionally vague, and (3) the disciplinary panel did not provide a meaningful explanation of its decision. He also faults Secretary LeBlanc and Deputy Warden Huff for not correcting these alleged mistakes during the administrative appellate process. Finally, he argues that disciplinary board members Nail and Fussell acted in retaliation for Plaintiff filing litigation against them.

Jamie Fussell testifies by affidavit that he had no direct involvement in the incident that led to the violation report and says Plaintiff's request to call witnesses was denied

because the witnesses' testimony was stipulated to and would have been repetitive. He adds a conclusory statement that the testimony was "not relevant and would have placed an undue burden on the institution." Lonnie Nail offers similar testimony and states that he did not, as suggested in Plaintiff's complaint, order Captain Williams to issue the RVR. Both members of the disciplinary board testify that they had "no knowledge of any pending litigation filed by inmate Derrick Scott against me" at the time of the hearing.

Neither Plaintiff nor Defendants have presented a complete set of the administrative remedy procedure ("ARP") documents, but Plaintiff has attached several of them to his motion. Doc. 17. In grievance DWCC 10-0067 Plaintiff complained about the lack of out-of-cell exercise during his period of isolation. Based on a written response by Colonel Nail, Assistant Warden Huff issued a denial that explained that loss of yard and recreation privileges were a departmentally sanctioned disciplinary tool, and Plaintiff was allowed out of his cell for his work assignment, which afforded him some exercise, fresh air, and sunlight.

Plaintiff also submits a decision of grievance DWCC-2010-0175 in which Assistant Warden Huff ruled on an appeal related to the disciplinary hearing. Plaintiff argued that members of the board should have recused themselves due to pending legal issues, but Huff found that the members were not involved in the incident that led to the charge and were not aware of any pending litigation filed by Plaintiff. Plaintiff argued that his request to call witnesses was denied out of retaliation. Huff ruled that Plaintiff had not provided evidence to substantiate such a motive. Plaintiff next argued that Rule 30W was unconstitutionally

vague. Huff responded that Plaintiff, by refusing to be double-bunked, threatened the stability of the unit because security required freeing up additional cell space. Assistant Warden Huff testifies in an affidavit that she prepared this ruling after "a thorough review of all evidence surrounding the incident" and the disciplinary hearing. Tracy Dibenedetto offers similar testimony that the decision on an appeal to the Secretary's level was issued after thoroughly reviewing the arguments presented and considering the totality of the evidence.

**Procedural Due Process**

Plaintiff argues that his right to procedural due process of law was violated when the disciplinary board members did not recuse themselves, denied him the ability to call a witness, did not explain their decision, and enforced a vague disciplinary rule. Prisoners have certain procedural due process rights, but they are not applicable unless a constitutionally protected liberty interest is at stake. Such a liberty interest is generally not at issue unless the prisoner faces restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 115 S.Ct. 2293 (1995).

Prisoner Sandin was found guilty of misconduct after yelling at an officer, and he was sentenced to 30 days disciplinary segregation in a special holding unit. The Court found no liberty interest at issue because discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of a sentence imposed by a court. The solitary confinement and segregation did not present a dramatic departure from the basic

conditions of the prisoner's sentence. The Fifth Circuit, after <u>Sandin</u>, has found that "administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." <u>Pichardo v. Kinker</u>, 73 F.3d 612, 613 (5th Cir. 1996). Absent extraordinary circumstances, segregation, being an incident to the ordinary life of a prisoner, will never be a ground for a procedural due process claim. <u>Martin v. Scott</u>, 156 F.3d 578, 580 (5th Cir. 1998).

The prisoner in <u>Hernandez v. Velasquez</u>, 522 F.3d 556 (5th Cir. 2008) alleged confinement to a shared cell for 12 months with permission to leave only for showers, medical appointments, and family visits. The Fifth Circuit found the assignment well within the range of confinement to be normally expected for a prisoner serving a life sentence. Similar claims were denied in <u>Malchi v. Thaler</u>, 211 F.3d 953, 958 (5th Cir. 2000) (30–day commissary and cell restrictions did not implicate a liberty interest), <u>Watkins v. Lnu</u>, 2013 WL 5977683 (5th Cir. 2013)(14 days of disciplinary segregation and three-month loss of commissary, visitation, and telephone privileges did not implicate a liberty interest), and <u>Dehghani v. Vogelgesang</u>, 229 Fed. App'x 282, 284 (5th Cir. 2007) (eight days in solitary confinement did not give rise to claim because "it is settled law that disciplinary segregation does not present" an atypical deprivation under <u>Sandin</u>).

Plaintiff was placed in disciplinary segregation for 10 days. He alleges that he was not allowed bedding or a sweatshirt except for 8 of each 24 hours. The record indicates that he was allowed outside his cell at times to perform his work assignment. That brief detention, under the <u>Sandin</u> standards, was not an atypical and significant hardship in relation

Page 5 of 11

to the ordinary incidents of prison life, so procedural due process claims may not be based on the disciplinary charge or how the hearing was conducted.

**Conditions of Confinement**

The limited ARP record before the court does not contain an indication that Plaintiff complained about the conditions in his cell during the 10-day disciplinary period. He did complain of a lack of out-of-cell exercise, with the exception of work call every other day and shower sessions. In his judicial complaint he alleged that, during his 10 days of discipline, he was stripped of his mattress, sheets, blankets, and sweatshirt and left to sit on a concrete slab during sub-freezing January temperatures. When the court asked him to amend his complaint and provide more details about his conditions, he stated only: "Plaintiff was deprived of his bedding and sweatshirt for (16) hours a day for (10) ten days."

Plaintiff now argues in his Motion for Judgment as a Matter of Law (Doc. 23) that the conditions he was under during this period of isolation were unconstitutional. Despite the apparent lack of an ARP regarding these complaints, Defendants have not raised an exhaustion defense to this motion, and the court may not raise the exhaustion issue sua sponte. The court may, however, recommend dismissal for failure to state a claim in which relief may be granted.

The Constitution "does not mandate comfortable prisons," but conditions of confinement "must not involve the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 101 S.Ct. 2392, 2399-400 (1981). Prison officials must provide humane

conditions of confinement, ensuring that "inmates receive adequate food, clothing, shelter, and medical care ... ." Farmer v. Brennan, 114 S.Ct. 1970, 1976 (1994).

An inmate must satisfy two requirements to demonstrate an Eighth Amendment violation. First, the deprivation must be, objectively, sufficiently serious, meaning it resulted in the denial of the minimal civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind, that being deliberate indifference to inmate health or safety. Palmer v. Johnson, 193 F.3d 346, 352 (5th Cir. 1999).

The length of confinement should be considered in deciding whether the confinement meets constitutional standards. In Hutto v. Finney, 98 S.Ct. 2565 (1978), the Court stated that a filthy, overcrowded cell might be tolerable for a few days but intolerably cruel for weeks or months. The Fifth Circuit found that inmates kept in a filthy cell for only three days did not make out a violation. Davis v. Scott, 157 F.3d 1003 (5th Cir. 1998). But in Palmer inmates were subjected to conditions lasting less than 24 hours, and the Fifth Circuit reversed summary judgment for prison officials. The conditions in Palmer were, however, much more egregious than those alleged here. Inmates were forced to sleep outside in a field in short sleeve shirts with no bedding or protection from insect bites. The temperature fell below 59 degrees, and the inmates were forced to urinate and defecate in a confined area shared by 48 men. The inmates resorted to digging holes in the dirt and building earthen walls to block the cold wind, while guards wore jackets, sat by a fire, or went to vehicles to run a heater. Palmer states that the court must consider both the duration of the conditions

and the totality of the specific circumstances that constituted the conditions of the confinement. Palmer, 193 F.3rd at 352.

Plaintiff was apparently allowed a mattress and other bedding for eight hours at night. The Constitution does not mandate that he also have a mattress outside of ordinary sleep periods. He was housed in an indoor cell with no noted sanitary issues, apparently had access to a toilet, and other typical cell features. Plaintiff refers to sub-freezing temperatures during that January, but he makes no specific allegations that his cell was unheated or otherwise at an extreme temperature where he suffered any constitutional harm due to a lack of a sweatshirt or other additional clothing outside the sleeping period. The conditions alleged by Plaintiff would have been undesirable and perhaps uncomfortable, but they do not reflect inhumane conditions of confinement by which prison officials wantonly and unnecessarily inflicted pain by denying the minimal measure of life's necessities. Disciplinary detention is meant to be punishment, so maximum comfort is not required. Plaintiff's claim regarding his conditions of confinement during the 10 days of segregation should be dismissed.

**Retaliation**

Plaintiff argues that disciplinary board members Nail and Fussell found him guilty in retaliation for litigation that Plaintiff filed against them prior to the disciplinary hearing. A disciplinary charge that is made in retaliation for an inmate exercising a constitutional right may give rise to a Section 1983 claim. The question with respect to such a claim is whether

there was retaliation for the exercise of a constitutional right, separate and apart from whether the underlying charge was valid. Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir. 1995).

The Fifth Circuit, fearful of conclusory and frivolous claims of retaliation, instructed in Woods that "trial courts must carefully scrutinize these claims." Id. at 1166. The inmate must be able to establish the violation of a specific constitutional right and that, but for the retaliatory motive, the defendant would not have issued the disciplinary charge. This places a "significant burden" on an inmate and "[m]ere conclusionary allegations of retaliation will not withstand a summary judgment challenge." Id. The inmate must produce direct evidence of motivation or set forth a chronology of events from which retaliation may plausibly be inferred. Id.

Lonnie Nail and Jamie Fussell both testify that they "had no knowledge of any pending litigation" filed by Plaintiff against them at the time of the hearing. Those denials are also reflected in the appellate decisions from the disciplinary finding. Plaintiff responds by pointing to documents that indicate Nail, Fussell, and Huff were aware of ARP grievances Plaintiff had filed against them, and those grievances later turned into a lawsuit in state court. Awareness of a grievance does not, however, mean that a person is also aware of a later-filed lawsuit; not every grievance ends in a lawsuit. And mere awareness of a grievance or lawsuit by a prison official does not mean that every action the official takes against the prisoner is in retaliation.

Plaintiff has not produced any direct evidence of retaliatory motive, and he has not set forth a chronology of events from which retaliation could plausibly be inferred. He has

only the coincidence of a suit and discipline. That is not enough to overcome a specific summary judgment challenge and require a trial to resolve the claim of retaliation.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's **Motion for Summary Judgment (Doc. 17)** and **Motion for Judgment as a Matter of Law (Doc. 23)** be **denied**, that Defendants' **Motion for Summary Judgment (Doc. 24)** be **granted**, and that judgment be entered dismissing Plaintiff's complaint with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 21st day of February, 2014.

Mark L. Hornsby
U.S. Magistrate Judge